# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
| | | |
|---|---|---|
| BRUCE A. LING Jr., | \* | |
| | \* | No. 18-858V |
| Petitioner, | \* | Special Master Christian J. Moran |
| | \* | |
| v. | \* | Issued: May 21, 2019 |
| | \* | |
| SECRETARY OF HEALTH | \* | Dismissal, jurisdiction, statute of |
| AND HUMAN SERVICES, | \* | limitations, lookback, table |
| | \* | amendment, 42 U.S.C. § 300aa-16(b), |
| Respondent. | \* | 42 U.S.C. § 300aa-11(b)(2). |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Bruce A. Ling Jr., pro se;
Lara Englund, United States Dep't of Justice, Washington, DC, for respondent.

**UNPUBLISHED ORDER GRANTING
RESPONDENT'S MOTION TO DISMISS**[1]

Bruce Ling filed a second petition under the National Childhood Vaccine Injury Act (Vaccine Act), 42 U.S.C. § 300aa–10 through 34 (2012), on June 18, 2018. This petition, like his first petition, No. 14-1017V, sought recovery under the Vaccine Act for alleged injuries that Mr. Ling suffered following his influenza vaccination on November 8, 2011. Even though Mr. Ling's first claim of a vaccine injury was already adjudicated on the merits, Mr. Ling now seeks a second bite of the apple. Mr. Ling bases his request for relief on a provision of the Vaccine Act

---

[1] Because this ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This means the ruling will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material before posting the ruling.

that allows petitioners to file a second petition if an amendment to the Vaccine Injury Table significantly increases the likelihood that a petitioner will obtain compensation. Mr. Ling, however, did not provide any basis for the undersigned to conclude that his chances of success have improved this second time around. Citing this deficit in Mr. Ling's petition, the Secretary moved for the claim to be dismissed. In recognition of Mr. Ling's pro se status, Mr. Ling was provided additional time to supplement his petition to address the problem identified by the Secretary. Nearly four months later, now 11 months after his petition was filed, Mr. Ling has still failed to do so. Accordingly, Mr. Ling's petition is now DISMISSED as impermissibly filed pursuant to 42 U.S.C. § 300aa-16(b) and 42 U.S.C. § 300aa-11(b)(2) of the Vaccine Act.

## Procedural History

Mr. Ling has filed three different petitions related to his November 8, 2011 vaccination. The first and third petitions were filed in this court under the Vaccine Act. The second was filed in federal court in the Northern District of Florida.

### First Court of Federal Claims Petition

Mr. Ling filed his initial petition under the Vaccine Act on October 20, 2014. He alleged that the November 8, 2011 flu vaccine caused him to suffer from "fever, lightheadedness, labored breathing, fluttering heart, spasms, weakness, fatigue, clenching jaw, [and] eventual unexplainable head, muscle and joint aches." Petition at 1. Mr. Ling's original petition did not explicitly claim that he suffered from Guillain-Barre syndrome (GBS) but did state that through independent research he had performed, he "had discovered Chronic Fatigue Syndrome, Chronic Epstein Virus Syndrome, Guillain Barre Syndrome and alike syndrome that had similar and same symptoms that he suffered from." Petition at 2.

His initial petition, like the present petition, was filed and pursued pro se. In his Rule 4 report, the Secretary opposed compensation, arguing that none of the treating doctors stated that the flu vaccine harmed Mr. Ling and Mr. Ling had not provided a report from an expert. Resp't's Rep., filed March 9, 2015, at 10.

Mr. Ling was directed to obtain a report from an expert. To facilitate this process, the undersigned set forth the minimum topics on which an expert needed to opine. Order, issued June 2, 2015.

Mr. Ling did not submit a report from an expert in support of his claims. Instead, Mr. Ling attempted to use a subpoena to compel the production of evidence that may support his claims. Eventually, on January 3, 2017, Mr. Ling

filed a motion for a hearing. The Secretary opposed this motion and requested a ruling on the record. Resp't's Cross-Mot. and Resp., filed Feb. 16, 2017. Mr. Ling filed a brief on March 10, 2017, and an affidavit from his brother on April 14, 2017.

On July 21, 2017, the undersigned denied Mr. Ling's claim for compensation. The decision found that Mr. Ling's treating physicians had not substantiated his claims of a vaccine injury, or any cognizable injury. Decision, issued July 21, 2017, 2017 WL 3814649, at *7. The undersigned also cited Mr. Ling's failure to provide expert opinion linking his vaccination to the injuries he alleged. Id.

### Northern District of Florida Petition

On February 20, 2018, Mr. Ling brought a civil action in the United States District Court for the Northern District of Florida for injuries suffered from the same vaccination. See Resp't's Mot., filed Oct. 2, 2018, exhibits A-C. That claim was brought against employees of the Florida Department of Corrections (where he was housed at the time of vaccination) and alleged that the vaccine administrators failed to exercise due care in their administration of the vaccine on November 8, 2011, which ultimately caused him to suffer symptoms of "Guillain Barre Syndrome, complex regional pain syndrome, neurologic injuries, transverse myelitis, encephalitis, CIDP neuritis, myositis, and alike injuries." Id. at exhibit B at 9. On July 16, 2018, United States District Judge Robert Hinkle of the Northern District of Florida dismissed Mr. Ling's petition for its failure to state a claim. Id. at exhibit C.

### Second Court of Federal Claims Petition

Mr. Ling filed the above-captioned petition with the Court of Federal Claims on June 18, 2018, approximately one month before his Florida action was dismissed. Mr. Ling's most recent petition arises out of the same operative facts as his initial petition. In fact, Mr. Ling filed the exact same petition as he did four years ago. However, Mr. Ling supplemented the 2018 petition with some hand-written additions to the original petition. He adds "GBS" to his list of post-vaccination symptoms. Petition, filed June 18, 2018, at 1. He also now describes his previously alleged symptoms of "neurological mobility of the arms when head tilted and dizziness while standing" as being "very consistent with GBS symptoms." Id. at 2. Mr. Ling averred that "his test results are consistent with a vaccine injured patient with (GBS) Guillain Barre Syndrome, in addition to his symptoms." Id.

Finally, Mr. Ling concluded his mark-up of the initial petition with the addition that "due to extraordinary circumstances this claim is filed timely because of Amended Table injury of (GBS). Also petitioner filed complaint in United States District Court due to dismissal of initial petition." Id. at 5.

An initial status conference was held on August 3, 2018. During the conference, respondent noted that no medical records had been filed with the petition. See order, issued Aug. 3, 2018. Petitioner responded by stating that he intended to adopt the records filed with the 2014 petition for the purposes of his 2018 petition. Id. Respondent stated that he intended to move for dismissal on the grounds that Mr. Ling's petition was statutorily barred. Id.

The Secretary moved to dismiss Mr. Ling's petition on October 2, 2018. In his motion, the Secretary argued that Mr. Ling's petition must be dismissed because his civil action in the Northern District of Florida was pending when he filed the present claim. Resp't's Mot., filed Oct. 2, 2018, at 3. In support of this argument, the Secretary cited 42 U.S.C. § 300aa-11(a)(5)(B), which provides that "if a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a [petition under the Vaccine Act]."

The Secretary also argued that Mr. Ling's petition was statutorily barred by the Vaccine Act's statute of limitations. The Act provides that petitions must be filed within "36 months after the date of the occurrence of the first symptom or manifestation of onset." 42 U.S.C. § 300aa-16(a)(2). However, as Mr. Ling pointed out in his 2018 petition, and as the Secretary acknowledges, the Vaccine Act contains a lookback provision that extends the statute of limitations when the Vaccine Injury Table is revised. The statute provides:

> If at any time the Vaccine Injury Table is revised and the effect of such revision is to permit an individual who was not, before such revision, eligible to seek compensation under the Program, or to significantly increase the likelihood of obtaining compensation, such person may, notwithstanding section 300aa-11(b)(2) of this title,[2] file a petition for such compensation not later than 2 years after the effective date of the revision

---

[2] Section 300aa-11(b)(2) provides that "only one petition may be filed with respect to each administration of a vaccine."

4

42 U.S.C. § 300aa-16(b). Because the table was amended in 2017 to provide that GBS with an onset between two and 42 days following the flu vaccine was presumptively caused by the flu vaccine, Mr. Ling claims that his petition is not covered by the three-year statute of limitations, but by the two-year limitation that starts with the revision of the table. Petition, filed June 18, 2018, at 5. The Secretary rebuts this, arguing that there does not exist preponderant evidence that Mr. Ling ever had GBS and thus the revision to the Table did not "significantly increase" his likelihood of obtaining compensation. Resp't's Mot., filed Oct. 2, 2018, at 3-4.

On January 25, 2019, the undersigned addressed respondent's motion for dismissal. In that order, the undersigned acknowledged that the Secretary was, strictly speaking, correct in his assertion that Mr. Ling's petition was jurisdictionally barred at the time of filing because he had a pending civil action. Order, issued Jan. 25, 2019, at 4-5. However, because Mr. Ling could cure that deficit by simply refiling the petition, the undersigned characterized respondent's requested relief as "needless formalism" that was particularly inadvisable under Congress's instruction that the undersigned "provide for a less-adversarial, expeditious, and informal proceeding for the resolution of petitions." Id. (citing 42 U.S.C. § 300aa-12(d)(2)(A)).

However, the Secretary's argument that Mr. Ling failed to include evidence in his petition that established that the amendment to the Vaccine Injury Table significantly increased his likelihood of success was compelling. Order, issued Jan. 25, 2019, at 5-6. Because Mr. Ling was proceeding pro se and should be provided some flexibility in his filings, the undersigned ordered Mr. Ling to supplement his petition with "medical records or opinions tending to show that he suffered from GBS two to 42 days following the November 8, 2011 flu vaccine." Order, issued Jan. 25, 2019, at 7. Otherwise, Mr. Ling was warned, the petition would be dismissed. Id.

On March 14, 2019, Mr. Ling filed a three-page letter. The letter raised several procedural complaints regarding his petition and requested additional time to respond to the order for Mr. Ling to supplement his petition. Mr. Ling's request was granted, and he was provided three additional weeks, or until April 12, 2019, to supplement his petition. After receiving leave for an extension of time to file his additional evidence, Mr. Ling filed a response on May 1, 2019. In his response, Mr. Ling stated his belief that he had "provided the court with any and all available evidence" and that the amendment to the Vaccine Injury Table, itself, was "evidence of petitioner's assertions of GBS in 2011, confirming and substantiating petitioner's claims of the onset of symptoms." Pet'r's Resp., filed May 1, 2019, at

1-2. Attached to Mr. Ling's response was a list of client compensation for vaccine injuries published on the website of Maglio Christopher & Toale, a law firm with extensive experience in the Vaccine Program.

## Summary of Medical Records

While Mr. Ling did not submit medical records alongside his 2018 petition, the undersigned incorporated the records from his 2014 petition into the record here. This obviated the need for Mr. Ling to refile all his medical records. The undersigned incorporates, with only small changes, portions of the summary of Mr. Ling's medical records provided in the decision issued on July 21, 2017. References to exhibit numbers reference exhibits filed with the 2014 petition.

\*   \*   \*

The records show Mr. Ling complained about many things being wrong with him many times. Usually, but not always, medical staff at the prison could not find any objective basis for Mr. Ling's complaint. When the medical staff did not respond how Mr. Ling thought the medical staff should respond, he made another complaint. This generated more paperwork, extending a cycle. Supplemental exhibit at PDF 220; supplemental exhibit at PDF 440.

While in prison and in both the 2014 and 2018 Court of Federal Claims petitions, Mr. Ling complained that the prison's medical staff was not caring for him properly. This charge is not necessarily fanciful in a general sense as Florida has had problems meeting its duty to people who are incarcerated. See Costello v. Wainwright, 430 U.S. 325, 326 (1977), rev'g 539 F.2d 547 (5th Cir. 1976) (en banc), reinstat'g 525 F.2d 1239 (5th Cir. 1976), aff'g 397 F. Supp. 20 (M.D. Fla. 1975). Thus, Mr. Ling's suggestion of systemic errors in medical records cannot be – and were not – dismissed out of hand.

Mr. Ling, however, failed to present any evidence that he specifically was mistreated. First, he presented no evidence from a doctor who questioned the care that he received while in prison. Second, Florida provided Mr. Ling with necessary medical care for serious health problems, such as an infected toe in 2009 and a urologic problem in 2013. Supplemental exhibit at PDF 474-94, PDF 102. Third, and most importantly, after Mr. Ling's release from prison, medical providers unaffiliated with the Florida correctional facilities also failed to find any verifying medical problems. See, e.g., exhibit 1 at 14. If these doctors, whose loyalty seems to be to Mr. Ling only, cannot match his subjective symptom to an objective sign, then Mr. Ling's credibility is diminished. For these reasons, Mr.

Ling has not rebutted the generally accepted principle that when medical records describe events occurring close in time to when the medical records were created, the medical records are accurate. See Cucuras v. Sec'y Health & Human Servs., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

The medical records show that Mr. Ling was born in 1976, and stopped attending school after completing the tenth grade. Exhibit 1 at 37. In June 1997, he went to prison. Supplemental exhibit at PDF 500, 608. During this incarceration, he reported joint pain. Id. at 540. He also declined a mumps-measles-rubella vaccination. Supplemental exhibit at PDF 505, 570. After serving time, he was released.

Mr. Ling returned to custody of the Florida Department of Corrections in 2006. Supplemental exhibit at PDF 301 (initial intake screening form). Mr. Ling informed a psychiatrist that he had a history of depression and anxiety. Supplemental exhibit at PDF 207 (September 14, 2006).

In the summer of 2011, Mr. Ling experienced problems when urinating. Supplemental exhibit at PDF 355. On September 7, 2011, Mr. Ling stated that since his last health evaluation, he has had "'same issues – freq urination, being tired.'" Id. at PDF 78. Around this time – still before vaccination – Mr. Ling reported back pain. Id. at PDF 349. An X-ray from November 4, 2011 showed that his lumbar spine was not remarkable. Id. at PDF 191.

A nurse administered the flu vaccine on November 8, 2011. Supplemental exhibit at PDF 346. Although a form indicated that Mr. Ling had consented to this vaccination, Mr. Ling later stated that he signed the informed consent form after the vaccination. Petition at 1 ¶ 3; supplemental exhibit at PDF 252, 262.

After the flu vaccination, Mr. Ling complained about health problems often. For example, on November 13, 2011, he said that on November 11, 2011 (three days after vaccination), he felt light-headed and had difficulty breathing. Supplemental exhibit at PDF 273. The Department of Corrections transferred him from one location to another, where he went to a doctor's clinic. On November 14, 2011, however, Mr. Ling reported "no chest pains, no dizziness." Supplemental exhibit at PDF 345. The doctor stated Mr. Ling might have hypertension. Exhibit 2 at 14.

On November 25, 2011, Mr. Ling reported weakness in his arms. Supplemental exhibit at PDF 339. On November 30, 2011, Mr. Ling reported having "knots" on his head and neck. The medical staff advised Mr. Ling to

continue taking his medications and educated him on anxiety and stress. Id. at PDF 457. On December 2, 2011, the medical staff followed a protocol for complaints of shortness of breath. Id. at PDF 455. On December 7, 2011, Mr. Ling said he felt irritated for not being treated adequately. Id. at PDF 440. On December 12, 2011, various laboratory tests came back normal. Id. at PDF 492-93. Mr. Ling underwent an X-ray of his cervical spine on December 21, 2011. The result was normal. Id. at PDF 189.

By January 2012, Mr. Ling's requests for medical assistance and complaints about his health were becoming more elaborate. Mr. Ling now suggested that he suffered from chronic fatigue syndrome. But, no doctor reached this diagnosis. E.g. supplemental exhibit at PDF 265. He told one treater that he had suffered from chronic fatigue syndrome all his life. Supplemental exhibit at PDF 438 (January 26, 2012).

Throughout 2012, Mr. Ling complained frequently of a variety of health issues, including post-traumatic stress, difficulty breathing, and numbness in arms and legs. Supplemental exhibit at PDF 244, 246. He suggested that the November 2011 flu vaccination was responsible for them. Supplemental exhibit at PDF 252-53; id. at PDF 53 (duplicated at exhibit 2 at 7); supplemental exhibit at PDF 235.

This pattern of complaints continued in 2013. Failing to receive the medical care he expected, he sought assistance from mental health specialists. Supplemental exhibit at PDF 197, 200, 205 (duplicated at id. at 209).

Mr. Ling was released from prison in October 2013. At his first medical appointment following his release, Mr. Ling recounted his concern that the flu vaccine injured him, especially with respect to chronic fatigue. Exhibit 1 at 38; supplemental exhibit at PDF 40; see also exhibit 1 at 6 (duplicated at supplemental exhibit at PDF 9).

In the follow-up appointment one month later, he complained about almost every system in his body. The doctor's plan stated that Mr. Ling "needs psychiatric care." Exhibit 1 at 29 (duplicated at supplemental exhibit at PDF 32). Similarly, in April 2014, the doctor commented that Mr. Ling was "fixated on [the] flu shot." Exhibit 1 at 20 (duplicated at supplemental exhibit at PDF 23).

In June 2014, Mr. Ling started receiving mental health services at Apalachee Center. In the context of giving a history, Mr. Ling stated that he had been anxious all his life. Exhibit 7 at 3-6.

continue taking his medications and educated him on anxiety and stress. Id. at PDF 457. On December 2, 2011, the medical staff followed a protocol for complaints of shortness of breath. Id. at PDF 455. On December 7, 2011, Mr. Ling said he felt irritated for not being treated adequately. Id. at PDF 440. On December 12, 2011, various laboratory tests came back normal. Id. at PDF 492-93. Mr. Ling underwent an X-ray of his cervical spine on December 21, 2011. The result was normal. Id. at PDF 189.

By January 2012, Mr. Ling's requests for medical assistance and complaints about his health were becoming more elaborate. Mr. Ling now suggested that he suffered from chronic fatigue syndrome. But, no doctor reached this diagnosis. E.g. supplemental exhibit at PDF 265. He told one treater that he had suffered from chronic fatigue syndrome all his life. Supplemental exhibit at PDF 438 (January 26, 2012).

Throughout 2012, Mr. Ling complained frequently of a variety of health issues, including post-traumatic stress, difficulty breathing, and numbness in arms and legs. Supplemental exhibit at PDF 244, 246. He suggested that the November 2011 flu vaccination was responsible for them. Supplemental exhibit at PDF 252-53; id. at PDF 53 (duplicated at exhibit 2 at 7); supplemental exhibit at PDF 235.

This pattern of complaints continued in 2013. Failing to receive the medical care he expected, he sought assistance from mental health specialists. Supplemental exhibit at PDF 197, 200, 205 (duplicated at id. at 209).

Mr. Ling was released from prison in October 2013. At his first medical appointment following his release, Mr. Ling recounted his concern that the flu vaccine injured him, especially with respect to chronic fatigue. Exhibit 1 at 38; supplemental exhibit at PDF 40; see also exhibit 1 at 6 (duplicated at supplemental exhibit at PDF 9).

In the follow-up appointment one month later, he complained about almost every system in his body. The doctor's plan stated that Mr. Ling "needs psychiatric care." Exhibit 1 at 29 (duplicated at supplemental exhibit at PDF 32). Similarly, in April 2014, the doctor commented that Mr. Ling was "fixated on [the] flu shot." Exhibit 1 at 20 (duplicated at supplemental exhibit at PDF 23).

In June 2014, Mr. Ling started receiving mental health services at Apalachee Center. In the context of giving a history, Mr. Ling stated that he had been anxious all his life. Exhibit 7 at 3-6.

On April 24, 2015, Mr. Ling saw a neurologist, Annet Ella Falchook. Dr. Falchook could not verify a vaccine injury. She recommended an EMG if Mr. Ling could pay for it. Exhibit 5 at 8. Mr. Ling had an EMG the next day and the EMG was negative. Id. at 1, 4.

Mr. Ling's 2018 petition does not include any medical records, from 2011 or present-day, that informs the question of whether Mr. Ling suffered from GBS in 2011 following the flu vaccination.

## Analysis

The Vaccine Act explicitly provides that Mr. Ling cannot file a second petition pertaining to the November 8, 2011 vaccination without a showing that the amendments to the Vaccine Injury Table "significantly increase the likelihood of obtaining compensation." 42 U.S.C. § 300aa-16(b). Neither Mr. Ling's petition, nor his response to the Secretary's dismissal motion, appear to provide evidence or argument to show that Mr. Ling has met this requirement of the Vaccine Act. To ensure that Mr. Ling had a full and fair opportunity to address this issue, he was explicitly instructed, in the January 25, 2019 order, on the ways in which his petition was deficient and has been provided with a generous amount of time to address these deficiencies. Mr. Ling has failed to do so.

To be clear, the undersigned does not interpret 42 U.S.C. § 300aa-16(b) to always require subsequent petitions governed by the provision to be accompanied by affirmative evidence showing a "significant increase" in the likelihood of obtaining compensation. Had the dismissal of Mr. Ling's 2014 petition rested solely on the question of whether the flu vaccine can cause GBS, Mr. Ling may be able to simply cite the revisions to the Table to demonstrate a significant increase in his likelihood of obtaining compensation. However, Mr. Ling's petition was not dismissed on this basis. Instead, the dismissal of Mr. Ling's 2014 petition was based on the finding that Mr. Ling had failed to present evidence, beyond his unsubstantiated averments, that the vaccine he received on November 8, 2011 was followed by any cognizable injury at all. Decision, issued July 21, 2017, 2017 WL 3814649, at *7. Accordingly, the revision to the Table does little, if anything, to change the equation in terms of Mr. Ling's entitlement to compensation. If Mr. Ling were to rely on the Table revision to reopen his petition, he needed to provide some evidence that he suffered from GBS following the November 8, 2011

vaccination. Mr. Ling has failed to do this beyond his naked averments.[3] Furthermore, the undersigned has revisited the important medical records filed with Mr. Ling's initial petition and has been unable to identify medical records that substantiate the conclusion that Mr. Ling suffered from GBS following the 2011 vaccination.

Although Mr. Ling's petition was deficient, the undersigned recognizes that Mr. Ling is proceeding pro se. Accordingly, Mr. Ling is entitled to a certain, but limited, amount of flexibility in his filings. See Colbert v. United States, 617 F. App'x 981, 983 (Fed. Cir. 2015) ("A pro se litigant's complaint is held to a less stringent standard than formal pleadings filed by lawyers") (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

Mr. Ling has been provided this flexibility. The deficit in Mr. Ling's filings was first raised during an initial status conference on August 3, 2018. It was raised again by respondent in his motion to dismiss on October 2, 2018. It was again explained to petitioner in an order to show cause issued on January 25, 2019, and once more in an order issued on March 20, 2019. Nevertheless, Mr. Ling has been unable to satisfy the jurisdictional requirements of the Act. Although Mr. Ling's pro se status entitles him to some flexibility with his pleadings, it does not change the need for Mr. Ling's petition to comply with the requirements of the Act. See Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

Accordingly, Mr. Ling's petition is DISMISSED as statutorily barred under 42 U.S.C. § 300aa-16(b) and 42 U.S.C. § 300aa-11(b)(2).

The Clerk's Office is instructed to enter judgment in accord with this decision.

**IT IS SO ORDERED**.

_Christian J. Moran_
Christian J. Moran
Special Master

---

[3] Mr. Ling has simply stated that "petitioner Ling suffered GBS in 2011 upon an [in]oc[]ulation of the influenza vaccine and still does this very day." Pet'r's Resp., filed Nov. 8, 2018, at 8.