# In the United States Court of Federal Claims

No. 18-858V

(E-Filed: November 26, 2019)[1]

|  |  |
|---|---|
| BRUCE A. LING, JR., | ) |
| Petitioner, | ) Vaccine (influenza); National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 (2012). |
| v. | ) |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | ) |
| Respondent. | ) |

Bruce A. Ling, Jr., Tallahassee, FL, pro se.

Amy P. Kokot, Trial Attorney, with whom were Joseph H. Hunt, Assistant Attorney General, C. Salvatore D'Alessio, Acting Director, Catharine E. Reeves, Deputy Director, Heather L. Pearlman, Assistant Director, Torts Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.

OPINION

CAMPBELL-SMITH, Judge.

On May 21, 2019, the special master issued his decision denying compensation in this vaccine case. See ECF No. 18. On June 20, 2019, petitioner filed a motion for review of the special master's decision. See ECF No. 19. Respondent filed its response on July 19, 2019. See ECF No. 22. Petitioner's motion is fully briefed and ripe for decision.

---

[1] Pursuant to Rule 18(b) of the Vaccine Rules of the United States Court of Federal Claims (Appendix B to the Rules of the United States Court of Federal Claims), this opinion was initially filed under seal on October 30, 2019. Pursuant to ¶ 4 of the ordering language, the parties were to propose redactions of the information contained therein on or before November 13, 2019. No proposed redactions were submitted to the court.

The special master denied petitioner compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34 (2012) (the Vaccine Act). As explained below, the court affirms the special master's dismissal of the petition. Accordingly, petitioner's motion for review is **DENIED**.

I.   Background

On June 18, 2018, petitioner filed this case seeking compensation for an injury he allegedly suffered as the result of receiving the influenza (flu) vaccine on or about November 8, 2011. See ECF No. 1. In reaching his decision, the special master identified the following relevant facts.[2]

On October 20, 2014, petitioner filed his initial petition relating to injuries allegedly arising from the November 8, 2011 vaccine. See ECF No. 18 at 2. The assigned special master ultimately denied this petition on July 21, 2017, finding that "Mr. Ling's treating physicians had not substantiated his claims of a vaccine injury, or any cognizable injury." Id. at 3. The special master also noted "Mr. Ling's failure to provide expert opinion linking his vaccination to the injuries he alleged." Id. Thereafter, petitioner filed a similar claim in the United States District Court for the Northern District of Florida, which was dismissed for failure to state a claim on July 16, 2018.[3] Id.

Petitioner filed the instant petition on June 18, 2018, which was nearly one month prior to the federal district court's dismissal of the vaccine-related claim in Florida. In the petition now before the court, petitioner alleges injuries resulting from the same November 8, 2011 flu vaccination. See ECF No. 1 at 1. Petitioner claims that after receiving the vaccine, he experienced "fever, lightheadedness, labored breathing, fluttering heart, spasms, weakness, fatigue, clenching jaw, eventual unexplainable head, muscle and joint aches," that he contends were caused by the vaccine. Id. He further claims that he experienced "continuous suffering of brain and neurological problems, spasms, respiratory symptoms, irregular blood flow, numbness in extremities, muscle and joint pains, chronic fatigue and worsened urological problems." Id. at 3. He states that "his test results are consistent with a vaccine injured patient with (GBS) Guillain Barre Syndrome." Id. Petitioner also suggests that "the Flu-shot had trigger[e]d symptoms of a 'preexisting health condition' that was dormant," although he does not specify what the condition is. Id. at 4. In addition to outlining the symptoms he suffered, petitioner makes

---

[2]   For clarity of the narrative, the court cites to the special master's decision and omits direct citations to the record therein.

[3]   In his decision, the special master listed the dismissal date for petitioner's district court case as July 16, 2018. See ECF No. 18 at 3. The district court's opinion was signed on July 16, 2018, and filed on July 17, 2018. See Ling v. Stoltzfus, Case No. 18-101, 2018 WL 3451520 (N.D. Fla. 2018).

several statements relating to the conduct of, and inadequate medical attention provided by, employees of the Florida Department of Corrections.  See generally id. at 4-5.

Respondent moved to dismiss the second petition for two reasons.  First, respondent argued that petitioner's claim was barred because "his civil action in the Northern District of Florida was pending when he filed the present claim."  See ECF No. 18 at 4.  See also 42 U.S.C. § 300aa-11(a)(5)(B) (stating that "if a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a [petition under the Vaccine Act]").  And second, respondent argued that petitioner's claim was barred by the Vaccine Act's statute of limitations.  See ECF No. 18 at 4.  See also 42 U.S.C. § 300aa-16(a)(2) (requiring that petitions be filed within "36 months after the date of the occurrence of the first symptom or manifestation of onset").  Petitioner countered respondent's argument as to the statute of limitations, arguing that the Vaccine Injury Table had been updated in 2017, which effectively extended the statute of limitations.  See ECF No. 18 at 4.

The revision cited by petitioner extends the time for filing, in pertinent part, as follows:

> If at any time the Vaccine Injury Table is revised and the effect of such revision is to permit an individual who was not, before such revision, eligible to seek compensation under the Program, or to significantly increase the likelihood of obtaining compensation, such person may, notwithstanding section 300aa-11(b)(2)[4] of this title, file a petition for such compensation not later than 2 years after the effective date of revision.

42 U.S.C. § 300aa-16(b).  Petitioner argued before the special master that this filing extension applies to his case because the Vaccine Injury Table was "amended in 2017 to provide that GBS with an onset between two and 42 days following the flu vaccine was presumptively caused by the flu vaccine."  ECF No. 18 at 5.  Respondent, in turn, argued "that there does not exist preponderant evidence that Mr. Ling ever had GBS and thus the revision to the Table did not 'significantly increase' his likelihood of obtaining compensation."  Id.

With regard to respondent's first argument for dismissal, the special master agreed that petitioner had improperly filed his claim during the pendency of his district court action.  Id.  Nevertheless, he concluded that the case should go forward because petitioner "could cure that deficit by simply refiling the petition," a requirement that the special master viewed as "needless formalism" that runs contrary to the congressional

---

[4]   42 U.S.C. § 300aa-11(b)(2) provides that "only one petition may be filed with respect to each administration of a vaccine."

3

mandate that special masters "provide for a less-adversarial, expeditious, and informal proceeding for the resolution of petitions." Id.

Respondent's second argument, however, was successful. The special master held that petitioner failed to "include evidence in his petition that established that the amendment to the Vaccine Injury Table significantly increased his likelihood of success." Id. By show cause order dated January 25, 2019, the special master directed petitioner to supplement the record with "medical records or opinions tending to show that he suffered from GBS two to 42 days following the November 8, 2011 flu vaccine." ECF No. 10 at 6. The special master explained that "Mr. Ling is not required to present preponderant proof of a vaccine injury to clear this jurisdictional hurdle, but he is required to put forth some evidence that can allow the undersigned to conclude that the Table significantly increased his likelihood of obtaining compensation." Id. at 6-7. He then warned that "[o]therwise, Mr. Ling's petition will be dismissed." Id. at 7.

On March 14, 2019, petitioner sought an extension of the time in which the special master required him to respond to the show cause order, see ECF No. 13, which the special master granted, to and including April 12, 2019, see ECF No. 14. On April 26, 2019, petitioner requested a second extension, see ECF No. 15, which the special master granted, to and including May 17, 2019, see ECF No. 16. Petitioner filed a response to the show cause order on May 1, 2019. See ECF No. 17. In that response, petitioner offered no new evidence, and stated that he had already "provided the court with any and all available evidence there is to provide." Id. at 1. He noted that "[e]ven though some treating doctors and the respondents had ignored or rejected petitioner's claims, it was done so because they were unqualified/uncertified and or out of fear of liability." Id. at 3.

The special master then proceeded to review in detail the medical records submitted with petitioner's 2014 petition. See ECF No. 18 at 6-9. At the outset of his review, the special master provided the following summary:

> The records show Mr. Ling complained about many things being wrong with him many times. Usually, but not always, medical staff at the prison could not find any objective basis for Mr. Ling's complaint. When the medical staff did not respond how Mr. Ling thought the medical staff should respond, he made another complaint. This generated more paperwork, extending a cycle.

Id. at 6. More specifically, the special master found that the records support petitioner's claim that he received the flu vaccine on November 8, 2011. See id. at 7. Three days later, petitioner reportedly "felt light-headed and had difficulty breathing." Id. He was seen by a doctor on November 14, 2011, and was diagnosed with possible hypertension. Id. On November 25, 2011, petitioner reported "weakness in his arms," and on November 30, 2011, he reported "'knots' on his head and neck." Id. In response, the

4

medical staff advised petitioner to "continue taking his medications and educated him on anxiety and stress." Id. at 8.

In December 2011, petitioner complained of shortness of breath, had various normal laboratory test results, and a normal spinal X-ray. See id. In January 2012, petitioner's "requests for medical assistance and complaints about his health were becoming more elaborate." Id. Petitioner claimed to suffer from chronic fatigue syndrome, but no such diagnosis was made. Id. Petitioner continued to complain, throughout 2012, about a "variety of health issues, including post-traumatic stress, difficulty breathing, and numbness in [his] arms and legs." Id. And "[h]e suggested that the November 2011 flu vaccination was responsible for them." Id. Petitioner's complaints continued until he was released from prison in October 2013, and thereafter he "complained about almost every system in his body." Id. His treating physician stated that petitioner "needs psychiatric care," and further stated that he was "fixated on [the] flu shot." Id. (alteration in original).

The special master concluded that the petition "does not include any medical records, from 2011 or present-day, that informs the question of whether Mr. Ling suffered from GBS in 2011 following the flu vaccination." Id. at 9. Without such evidence, petitioner was unable to show that the 2017 amendments to the Vaccine Injury Table "significantly increased the likelihood of obtaining compensation" for injuries which resulted from the flu vaccine he received in November 2011. Id. The special master was careful to note that claims based on table revisions do not categorically require additional evidence following the revision. See id. Such evidence was required in this case, however, because petitioner had failed to show, at any stage of these proceedings, that he "suffered from GBS following the November 8, 2011 vaccination." Id. at 9-10.

II.     Legal Standards

This court has jurisdiction to review the decision of a special master in a Vaccine Act case. 42 U.S.C. § 300aa-12(e)(2). "Under the Vaccine Act, the Court of Federal Claims reviews the decision of the special master to determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]'" de Bazan v. Sec'y of Health & Human Servs., 539 F.3d 1347, 1350 (Fed. Cir. 2008) (quoting 42 U.S.C. § 300aa-12(e)(2)(B) and citing Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1277 (Fed. Cir. 2005)) (alteration in original).

This court uses three distinct standards of review in Vaccine Act cases, depending upon which aspect of a special master's judgment is under scrutiny.

> These standards vary in application as well as degree of deference.  Each standard applies to a different aspect of the judgment.  Fact findings are

5

reviewed . . . under the arbitrary and capricious standard; legal questions under the "not in accordance with law" standard; and discretionary rulings under the abuse of discretion standard.

Munn v. Sec'y of Dep't of Health & Human Servs., 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).

Petitioner bears the burden of proving, by a preponderance of the evidence, that "the vaccination brought about [his] injury by providing: (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." Althen, 418 F.3d at 1278. "Because causation is relative to the injury, a petitioner must provide a reputable medical or scientific explanation that pertains specifically to the petitioner's case, although the explanation need only be 'legally probable, not medically or scientifically certain.'" Broekelschen v. Sec'y of Health & Human Servs., 618 F.3d 1339, 1345 (Fed. Cir. 2010) (quoting Knudsen v. Sec'y of Health & Human Servs., 35 F.3d 543, 548-49 (Fed. Cir. 1994)).

III.    Analysis

In his motion for review, petitioner objects to the special master's decision on several grounds, each of which suggests that the special master failed to consider important facts or arguments presented by petitioner. See, e.g., ECF No. 19 at 6 ("Special Master . . . fail[ed] to address crucial facts of [ ] continued conspiracies against petitioner['s] due process rights claims of fairness equality, knowing of the manifest injustice that caused difficulty and advers[a]rial issues and negative consequences in petitioner's cases but refusing to address the remedy of testimony of treating doctors."); id. at 7 ("Special Master fail[ed] to address petitioner['s] argu[]ments of crucial facts of due process violations of fairness and equality and refused petitioner a fact or evidentiary hearing that would allow for crucial evidence of prison and primary care doctors testimony . . ."); id. at 8 ("Special Master appears to omit or fail to address crucial facts that petitioner Ling had attached certain medical records or documents to his reply motion in opposition to respondent[']s motion to dismiss."). In response to petitioner's motion for review, respondent argues: (1) that the special master did not err in the particulars of how he evaluated the evidence supporting petitioner's claim, ECF No. 22 at 13-15; and (2) that the special master was not required to convene a hearing in this case, id. at 15-16.

The parties' submissions now before the court do not address the critical error in the special master's decision-making process. Specifically, the special master erred when he waived, as "needless formalism," the jurisdictional defect in petitioner's case. See ECF No. 10 at 5. Petitioner filed the instant petition on June 18, 2018. See ECF No. 1.

6

At that time, petitioner had a claim for the same injuries pending before the United States District Court for the Northern District of Florida. See Ling v. Jones, et. al, Case No. 18-101, ECF No. 1 (civil rights complaint alleging inadequate prison medical care resulting in injuries related to the November 8, 2011 flu vaccination). And plaintiff pressed that litigation through an appeals process that did not conclude until October 25, 2018.[5]

"Under the Vaccine Act, 'the jurisdiction of the Court of Federal Claims is determined at the time of filing' the petition." Zavala v. Sec'y of Dep't of Health & Human Servs., Case No. 03-1337, 2006 WL 5616331, *4 (Sp. Mstr. Jan. 18, 2006) (quoting Matos v. Sec'y of Dep't of Health & Human Servs., 35 F.3d 1549, 1553 (Fed. Cir. 1994)). And as the special master acknowledged in his January 25, 2019 show cause order, "the Vaccine Act, as it has been interpreted by the [United States Court of Appeals for the] Federal Circuit, bars petitioners from bringing claims under the Act if they have a pending civil action." ECF No. 10 at 4 (citing Flowers v. Sec'y of Dep't of Health & Human Servs., 49 F.3d 1558, 1561 (Fed. Cir. 1995) (interpreting 42 U.S.C. § 300aa-11(a)(5)(B)).

In Flowers, a minor child received a vaccination on April 2, 1990. Following the vaccination, she suffered anaphylactic shock resulting in encephalopathy and ultimately death, on April 30, 1990. Flowers, 49 F.3d at 1559. The child's grandmother, and administratrix of her estate, filed a state court case alleging a vaccine-related injury on April 1, 1992. See id. The next day, April 2, 1992, she filed a petition with this court pursuant to the Vaccine Act. See id. After learning that the co-pendency of the claims might be problematic, petitioner voluntarily dismissed the state court case on July 31, 1992. See id. Respondent moved to dismiss the case for lack of jurisdiction on December 23, 1993. See id. The special master granted respondent's motion, holding that "§300aa-11(a)(5)(B) precluded Court of Federal Claims jurisdiction of Ms. Flowers's petition, which she filed while a civil action involving the same vaccine-related injury was pending." Id. The court subsequently affirmed the special master's decision. See id.

The Federal Circuit affirmed this court's decision that it lacked jurisdiction to hear petitioner's case "because when she filed her Vaccine Act petition, [petitioner] had pending a civil action involving the same vaccine-related injury." Flowers, 49 F.3d at 1559. Notably, the Federal Circuit reached this conclusion despite the fact that the

---

[5] The Florida district court dismissed petitioner's case on July 17, 2018, four weeks after petitioner had filed his petition before the Office of Special Masters. See Ling v. Stoltzfus, Case No. 18-101, 2018 WL 3451520 (N.D. Fla. 2018). Following dismissal, petitioner continued to pursue the case by filing an appeal with the United States Court of Appeals for the Eleventh Circuit on August 21, 2018. See Ling v. Jones, Case No. 18-101, ECF No. 16 (notice of appeal). The circuit court, in turn, dismissed the appeal, and its mandate was recorded on the district court's docket on October 25, 2018. See id. ECF No. 23.

7

petitioner's state court case had been dismissed prior to the respondent moving to dismiss the Vaccine Act petition for lack of jurisdiction. See id. (stating that petitioner's state court case was dismissed on July 31, 1992, while respondent filed its successful motion to dismiss on December 23, 1993). The court's decision was based on the fact that the state court action was pending at the time petitioner filed the Vaccine Act petition—that the state court action had been dismissed before the special master reached the merits of the petition did not change the analysis. See id. at 1560. The court found that given the co-pendency of the matters, "Ms. Flowers's petition [filed] on April 2, 1992, was . . . a nullity." Id.   See also Weddel v. Sec'y of Dep't of Health & Human Servs., 23 F.3d 388 (Fed. Cir. 1994) (dismissing petition for lack of jurisdiction pursuant to §300aa-11(a)(5)(B) when the state court action was filed in April 1988; the Vaccine Act petition was filed on September 12, 1990; and the state court action was dismissed one day later on September 13, 1990); Simpson v. Sec'y of Dep't of Health & Human Servs., Case No. 12-737, 2013 WL 388993, *2 (Sp. Mstr. 2013) (following Flowers and dismissing petition for lack of jurisdiction pursuant to §300aa-11(a)(5)(B), "to allow for re-filing of the petition in compliance with the Vaccine Act's statutory requirements," when the state court action was filed before the Vaccine Act petition; the Vaccine Act petition was filed on October 31, 2012; respondent's motion to dismiss for lack of jurisdiction was filed on November 29, 2012; the state court action was dismissed on December 5, 2012; and petitioner's response to the motion to dismiss noting dismissal was filed on December 18, 2012); Zavala, 2006 WL 5616331, *4  (following Flowers and dismissing petition for lack of jurisdiction pursuant to §300aa-11(a)(5)(B) when the state court action was filed on September 21, 2001; the Vaccine Act petition was filed on June 4, 2003; the state court action was dismissed on June 11, 2003; and respondent's motion to dismiss for lack of jurisdiction was filed on July 18, 2005).

Despite this established jurisdictional bar, the special master in this case allowed petitioner to pursue the merits of his case, reasoning that the jurisdictional defect could be cured by "simply dismissing the present petition and refiling it." ECF No. 10 at 5. He deemed such a course to be "needless formalism" and inconsistent "with the broader objectives of the Act." Id. As support for his decision, the special master cited Congress's directive that special masters "'provide for a less-adversarial, expeditious, and informal proceeding for the resolution of petitions.'" Id. (quoting 42 U.S.C. § 300aa-12(d)(2)(A)).

Bound by the Federal Circuit's pronouncement in Flowers, the court determines that jurisdictional requirements under the Vaccine Act may not be the subject of a discretionary waiver, even if—as the special master opined here—such waiver would facilitate a more expeditious resolution of the pending matters. Such jurisdictional requirements promote consistency in the treatment of, and ensure fairness in the consideration of, all filed petitions, and thus may not be abandoned on a case-by-case basis. The special master's decision to allow petitioner to proceed to a merits determination on the basis of his improperly filed petition was "not in accordance with

law." <u>Munn</u>, 970 F.2d at 870 n.10.  Because petitioner's case should have been dismissed for lack of jurisdiction, the special master erred in failing to do so.  For this reason, the court does not review the merits decision here.[6]

IV.   Conclusion

For the above-stated reasons, the court sustains the result of the special master's decision to dismiss petitioner's case, but for the reason that the special master lacked jurisdiction to consider the merits of the petition.  Accordingly, it is hereby **ORDERED** that:

(1)   Petitioner's motion for review, ECF No. 19, is **DENIED**;

(2)   The special master's decision to dismiss the petition, filed May 21, 2019, ECF No. 18, is **SUSTAINED**;

(3)   The clerk's office is directed to **ENTER** final judgment **DISMISSING** the petition for lack of jurisdiction; and

(4)   The parties shall separately **FILE** any **proposed redactions** to this opinion, with the text to be redacted clearly blacked out, on or before **November 13, 2019**.

IT IS SO ORDERED.

                                                              PATRICIA E. CAMPBELL-SMITH
                                                              Judge

---

[6]   Despite the fact that the court does not evaluate the merits of petitioner's claim here, petitioner has availed himself of several opportunities—before this court, the United States District Court for the Northern District of Florida, and the United States Court of Appeals for the Eleventh Circuit—to argue the merits of his case.  As previously noted, in each instance petitioner's case was dismissed.